IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APRIL D. UNSER, as parent and natural
guardian of S.W. and J.W.,

                      Plaintiffs,                  OPINION AND ORDER

   v.

                                                 19-cv-409-wmc

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

                      Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this action, April Unser, as parent and natural guardian of S.W. and J.W., brings two state law claims and, alternatively, one federal law claim for breach of an accidental death policy against Reliance Standard Life Insurance Company ("Reliance") under the Employee Retirement Insurance Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. Unser filed in Pepin County Circuit Court on April 25, 2019. Reliance removed the suit to federal court and soon thereafter moved to dismiss Unser's state law claims for failure to state a legally-cognizable claim under Federal Rule of Civil Procedure 12(b)(6) because they are preempted by ERISA. For the reasons below, the court will deny Reliance's motion.

FACTS

Plaintiff April Unser is a resident of Durand, Wisconsin. Defendant is a foreign corporation that is neither incorporated nor has its principal place of business in Wisconsin. Plaintiff's brother, Joseph Unser, died as a result of a collision between his

motorcycle and a deer.[1]  At the time of this tragic collision, Joseph was employed by a sand-mining company, Fairmount Santrol, Inc.

Fairmount was a member of the Reliance Standard Life Insurance Employer Trust through which employees could purchase voluntary "accidental death" life insurance policies from Reliance.  Joseph had purchased just such a policy from Reliance and paid 100% of the premiums via a salary deduction.  A copy of this policy is attached to plaintiff's complaint.  Joseph's children, S.W. and J.W., were the named beneficiaries of the decedent's policy, which provides for a $150,000 accidental death benefit.  While the beneficiaries appear to have followed the procedures set forth to recover this death benefit as set out by the policy, Reliance has refused to pay the benefit because it denied that Joseph's death was "accidental" within the policy's definition.[2]

Plaintiff's complaint does not mention, refer to, or attach any insurance policy other than the "accidental death" policy.  However, in support of its motion to dismiss, defendant attached a second "basic life" policy.  (*See* Def.'s Br., Ex. B (dkt. # 6-2.))  Unlike the "accidental death" policy, the "basic life" policy was involuntary and financed completely by Fairmount.  Defendant asserts that decedent's "accidental death" policy was "*not* an individual policy," and was made available to Fairmount employees as part of its

---

[1] For ease of reference, the court will refer to plaintiff April Unser and decedent Joseph Unser by their first names.

[2] Defendant alleges that the Joseph had a blood-alcohol content of twice the legal limit when he collided with the deer. (Def. Br. (dkt. #6) at 2.)  To support this allegation, defendant cites to paragraphs 10 and 11 of plaintiff's complaint.  However, neither in this entry, nor in any exhibit provided the court, does there appear support for such an allegation.  Regardless, Joseph's blood-alcohol content is not material to a finding of whether plaintiff's state law claims are preempted by federal law.

2

bundled employee benefits package. As evidence of the bundled policies, defendant asserts that the two policies were formed on the same date, July 1, 2013.

OPINION

Under both state and federal laws, plaintiff claims that defendant Reliance breached its contract with Joseph Unser and his beneficiaries by failing to pay the "accidental death" benefit secured by virtue of his employment with Fairmount.[3] Defendant has moved for dismissal of plaintiff's state law claims on the basis that Joseph was insured through Fairmount's employee welfare benefit plan and governed by ERISA, which preempts state law claims. *See* 29 U.S.C. § 1144(a) ("the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"). Thus, the threshold question is whether the decedent's "accidental death" insurance policy is governed by Fairmount's employee welfare benefit plan within the meaning of ERISA. If so, ERISA governs, and the state law claims must be dismissed.

I. Scope of Pleadings

In resolving a motion to dismiss under Rule 12(b)(6), the court takes all factual allegations in the complaint as true and draws all inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007). A motion to dismiss

---

[3] This court has federal question jurisdiction over ERISA claims. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 19-20 (1983). Here, the court also has diversity jurisdiction over the state law claims given the citizenship of the parties and value of the dispute. *See* 28 U.S.C. § 1332. Thus, even if ERISA is found to be inapplicable, this court would retain an independent basis to exercise subject matter jurisdiction.

should be granted only if it appears beyond question that the plaintiff can prove no set of facts that would entitle her to relief. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993). In general, a motion to dismiss tests the complaint; "[t]he mere presence of a *potential* affirmative defense does not render the claim for relief invalid." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (emphasis added). Moreover, preemption is an affirmative defense. *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (citing *Fifth Third Bank v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005)).

The first determination this court must make is what documents are properly considered in deciding defendant' motion to dismiss. Generally speaking, the court may not consider material outside the pleadings without converting a motion to dismiss into one for summary judgment. Fed. R. Civ. P. 12(b). While the complaint and its exhibits are the typical boundaries in a motion to dismiss under Rule 12(b)(6), documents attached by a defendant may also be considered part of the pleadings under Federal Rule of Civil Procedure 10(c), but only if referred to in the plaintiff's complaint and deemed central to her claim. *Venture* 987 F.2d at 431.

In *Venture*, the Seventh Circuit reasoned that a defendant's exhibits should be included in considering a motion to dismiss a breach of contract claim because (1) the complaint made numerous references to those same exhibits and (2) the attached documents were the "core of the parties' contractual relationship." *Id*. Five years later, the Seventh Circuit cautioned in *Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998), that Rule 10(c) provides "a narrow exception[,] aimed at cases interpreting, for example, a contract,"

4

but is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Id*. at 347.

Here, the scope of the pleadings is generally limited to plaintiff's complaint and her brother's voluntary, "accidental death" life insurance policy, attached to her complaint as Exhibit B. While defendant has attached a second life insurance policy to its motion to dismiss, ostensibly because it is referred to by plaintiff and central to her claim, that policy is neither of those things; instead, its consideration would require conversion of the pending motion to one for summary judgment under Rule 12. *See Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 775 (7th Cir. 2001) (criticizing district court for granting motion to dismiss based "not on the complaint but on the text of the contract, which was not attached to the complaint," rather than acknowledging its consideration of the contract had converted defendant's motion to one for summary judgment). Unlike the complaint in *Venture*, which included *numerous* references to the defendant's attached exhibits, the present complaint contains *no* references to defendant's exhibits, at least expressly. Furthermore, as pleaded and drawing all inferences for plaintiff, the voluntary "accidental death" policy appears on its face to stand alone as a contractual relationship between the plaintiff and the defendant. Indeed, the attached "accidental death" plan states that, "[t]he entire contract between you and us is this Policy, the policy Application (a copy of which is attached at issue), the Participating Unit Application and any endorsements or amendments." (Compl., Ex. B (dkt. #1) 3.0.) Unlike in *Venture*, where the defendant's exhibits plainly formed the core of the contractual relationship at issue, defendant's exhibits here may actually be part of a separate contractual relationship. Of course,

5

defendant may ultimately prevail on its assertion that both policies fall under the same employee benefits plan and are governed by ERISA, *see Burclaw v. Standard Ins. Co.*, No. 18-cv-855-wmc, at *15-21 (W.D. Wis. Jan. 24, 2020), but that is an issue for summary judgment, or perhaps trial, not an issue that can be resolved in the pleadings.

Finally, defendant cites *Bogie v. Rosenberg*, 705 F.3d 603 (7th Cir. 2013), to support the rule that "when an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Id*. at 609. However, *Rosenberg* is also inapplicable. In that case, the court affirmed a motion to dismiss based largely upon the content of a video, which was both referred to numerous times in the complaint *and* attached *by the plaintiff*. *Id*. at 608 ("[plaintiff] incorporated the video recording into her original complaint both by reference and by physically attaching the video recording to the amended complaint"). This video showed that the plaintiff was not in an area in which she was entitled to a reasonable expectation of privacy. *Id.* at 612. Thus, the Seventh Circuit held that dismissal of plaintiff's claim for invasion of privacy in that area was properly dismissed by the court without looking beyond the four corners of the complaint.[4]

Unlike in *Rosenberg*, defendant urges this court to grant its motion to dismiss based on a policy and policy application attached and referred to *by defendant*, rather than the plaintiff, not to mention additional factual representations not found in the complaint.

---

[4] In *Rosenberg*, the court cites to *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540 (7th Cir. 2007), to support dismissal based on an exhibit, but that, too, was a case where the *plaintiff* included and referred to an exhibit that disproved her own claims. *Id*. at 542. As a result, plaintiff pleaded herself out of court. *Id*.

This is inappropriate. *See Berthold*, 242 F.3d at 777 (holding that a judge erred granting motion to dismiss based on a "contract, which was not part of the complaint"). Although potentially legally significant to defendant's affirmative defense of preemption, these exhibits were not referred to in the complaint, nor are they central to plaintiff's claim as pleaded. As such, the court will not consider defendant's attached exhibits for purposes of deciding its motion to dismiss.

Proceeding under this narrower scope, the court will next consider whether the complaint and "accidental death" plan allege sufficient factual support for a claim upon which relief might be granted.

**II. ERISA Preemption**

Among other things, ERISA protects insurance benefits by setting minimum standards for most voluntarily established employee welfare benefit plans. *See* 29 U.S.C. § 1001. Defendant argues that the policy at issue here is governed by ERISA, necessitating the dismissal of plaintiff's state law claims on preemption grounds. In contrast, plaintiff argues that the "accidental death" policy is not governed by ERISA at all.

The ERISA statute defines "employee welfare benefit plans" or "welfare plans" as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in § 302(c) of the Labor Management Relations Act, 1947 (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). Under this definition, an ERISA plan essentially requires: (1) a "plan, fund or program" (2) established and maintained by an employer or employee organization or both, (3) for the purpose of providing death benefits to beneficiaries. If all three are satisfied, and the plan is not otherwise exempt under 29 U.S.C. § 1003(b), then the plan is subject to ERISA governance, and ERISA preempts related state law claims. 29 U.S.C. § 1144(a); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987) ("[i]f a state law 'relates to . . . employee benefit plans,' it is pre-empted"). At least for purposes of defendant's motion to dismiss, plaintiff does not dispute that the first and third elements are satisfied.[5] Instead, plaintiff alleges that Fairmount neither established nor maintained the "accidental death" policy at issue as required by the second element.

---

[5] As to whether a "plan, fund, or program" exists, the Seventh Circuit instructed in *Diak v. Dwyer, Costello, & Knox, P.C.*, F.3d 809 (7th Cir. 1994), that the appropriate inquiry is "whether from the surrounding circumstances a reasonable person could ascertain (1) the intended benefits, (2) beneficiaries, (3) source of financing, and (4) procedures for receiving benefits." Here, all four requirements would appear to be met because the "accidental death" policy attached to the complaint contains all the required information. The intended benefits are death, accidental death, and dismemberment benefits. (Compl. Ex. B (dkt. #1) 12.0; 15.0.) The class of beneficiaries is identified on page 7.0. The source of financing is identified on the cover page as "This Policy" and is further explained on pages 8.0, 9.0, and 11.0. And finally, the procedures for receiving benefits are explained on pages 16.0, 11.0, and 12.0. Thus, the requirement that a plan exists to provide death benefits appears to be satisfied.

As to whether the plan was "established and maintained by an employer or employee organization or both," the Seventh Circuit has reasoned that "[a]n ERISA plan requires an ongoing administrative scheme" by the employer, and further, that one factor to consider in determining the presence of such a scheme is whether the plan "requires [the employer's] managerial discretion in its administration." *Cvelbar v. CBI Ill. Inc.*, 106 F.3d 1368, 1374-77 (7th Cir. 1997). For example, an employer does not "establish and maintain" a plan if it is a mere advertiser of an insurer's policies, who makes no contributions other than as a conduit between its employees and an insurance company. *See, e.g., Credit Managers Ass'n v. Kennesaw Life & Acc. Insurance*, 809 F.2d 617 (9th Cir. 1987); *Burclaw*, No. 18-cv-855-wmc, at *15-21; *Ellington v. Metro. Life Ins. Co.,* 696 F. Supp. 1237, 1239 (S.D. Ind. 1988). In short, minimal, ministerial duties performed by an employer to allow commerce between an insurance provider and its employees do not render the plan one "established and maintained" by the employer as required under ERISA, nor does simply providing access. *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1135 (7th Cir. 1986).

To further clarify the "establish and maintain" element, the Department of Labor has also promulgated a "safe harbor" provision consisting of four-requirements that if met, will take an employer's sponsored benefit outside ERISA's reach. *See Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 930 (7th Cir. 2018) (citing 29 C.F.R. § 2510.3-1(j)). Specifically, this safe harbor provision excludes ERISA coverage of a benefit plan if:

(1) No contributions are made by an employer or employee organization;
(2) Participation in the program is completely voluntary for employees or members;
(3) The sole functions of the employer or employee organization with

> respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> 
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

Accepting all factual allegations in the complaint here as true, the court can reasonably infer that Fairmount did not establish and maintain the "accidental death" insurance policies, but rather acted as a simple conduit between Reliance and employees interested in purchasing this insurance. First, the attached policy identifies Reliance Standard as the claims administrator. Second, the complaint describes the "accidental death" policy as a contract between the decedent and Reliance, with Fairmount having, at most, a minor, ministerial role. Third, Reliance is responsible for maintaining records, authorizing any changes, and providing certificates of insurance. Fourth, Reliance reserved the right to terminate the contract at any time. Fifth, the recovery procedures directed Fairmount employees to work with Reliance, rather than Fairmount. Sixth, and finally, given the described recovery procedures, the "accidental death" policy does not appear to require any managerial discretion in its administration, much less Fairmount's exercise of discretion.

Similarly, the complaint adequately alleges that the safe harbor provision applies. First, plaintiff alleges that decedent paid 100% of the premiums for the "accidental death" plan. Second, plaintiff alleges that the decedent participated voluntarily in the "accidental

death" plan. Third, plaintiff alleges that Fairmount completed, at most, minor ministerial duties. And fourth, plaintiff alleges that Fairmount did not receive any consideration for offering "accidental death" policies to its employees. Thus, because plaintiff has sufficiently alleged that the safe harbor provision applies, she has stated legally-cognizable claims under state law.

Defendant would base its arguments against plaintiff's safe-harbor allegations upon the bundling of the "accidental death" policy with the "basic life" policy that it attached to its brief in support of its motion to dismiss. In particular, defendant relies on *Gaylor v. John Hancock Mut. Life Ins.,* 112 F.3d 460 (10th Cir. 1997), for the proposition that this court must treat Fairmount's "basic life" policy and "accidental death" policy as one. Certainly, there is good authority for this possible outcome. *See Postma v. Paul Revere Life Ins. Co.,* 223 F.3d 533, 538 (7th Cir. 2000) ("For purposes of determining whether a benefit plan is subject to ERISA, its various aspects ought not be unbundled."); *Cehovic-Dixneuf*, 895 F.3d at 930; *Burclaw*, No. 18-cv-855-wmc, at *16-18. However, as explained above, for this motion to dismiss, the court will not consider defendant's exhibits, much less accept its unverified representation as to the overlap in those insurance policies with respect to their establishment and maintenance. And, at least as alleged, this case is different than *Gaylor* and similar Seventh Circuit cases. There, the courts were properly considering several policies; this case concerns only one policy at present. Moreover, the complaint alleges that this "accidental death" policy was a stand-alone contract. As such, relying on that policy and the four corners of the complaint to which it was attached, the court cannot find, as a matter of law, that Fairmount established and maintained the

11

decedent's "accidental death" policy.  Thus, plaintiff's claims will not be dismissed.

ORDER

IT IS ORDERED that defendant's motion to dismiss Counts I and II of plaintiff's complaint (dkt. #5) is DENIED.

Entered this 6th day of February, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge